UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FAIR HOUSING JUSTICE CENTER, INC.,

                     Plaintiff,

    v.

TOWN OF EASTCHESTER,

                     Defendant.

No. _____

**COMPLAINT**

Plaintiff Fair Housing Justice Center, Inc. ("FHJC"), by its attorneys, Emery Celli Brinckerhoff & Abady, LLP, for its Complaint against Defendant Town of Eastchester (the "Town") alleges as follows:

### INTRODUCTION

1.    This action seeks to enjoin the Town of Eastchester from discriminating on the basis of race and national origin in its Section 8 housing voucher program and zoning code.

2.    The Town of Eastchester has two programs designed to provide low-income families and seniors with decent and affordable housing. Through a system of preferences, the Town has designed those programs to benefit its own overwhelmingly white residents and their relatives at the expense of even the neediest applicants from other parts of more-racially diverse Westchester County and beyond.

3.    The Town operates its federally funded rental-assistance Section 8 Housing Choice Voucher Program in a way that ensures these results. Town residents are given preference in the distribution of vouchers, and, because the Town is 87% white and non-Hispanic, that residency preference leads to the exclusion of most African American and

Hispanic renters.  The preference results in *ten- to fifteen-year* waits for non-residents, who are more likely to be African American or Hispanic.

4.      The Town has imported similar residency preferences into its zoning code, which allows a special use permit for senior housing developments that include low-income units.  The disparate results that plague the voucher program will inevitably be the same for low-income seniors when two senior housing developments, currently under consideration by the Town's zoning board, are completed.

5.      The Town has failed to consider the discriminatory impact of its residency preference schemes.  As a result, its housing programs suppress minority participation, deny housing opportunities to African Americans and Hispanics, and perpetuate residential racial segregation.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 3613.  This Court has supplemental jurisdiction over the New York State law claims pursuant to 28 U.S.C. § 1367.

7.      The acts complained of occurred in the Southern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

### Fair Housing Justice Center, Inc.

8.      Plaintiff Fair Housing Justice Center, Inc. is a private non-profit organization dedicated to ensuring that all people have equal access to housing opportunities in the greater New York City region by eliminating housing discrimination

and creating open, accessible, and inclusive communities. It is organized under the laws

of New York and operates within the Southern and Eastern Districts of New York,

including Westchester County.

9.     Among other things, FHJC (a) provides information to the public and other

non-profit organizations in the New York City regional area about fair housing laws;

(b) provides intake counseling to individuals and organizations with allegations of

housing discrimination; (c) conducts testing and other investigations of allegations of

housing discrimination; (d) makes legal referrals to cooperating attorneys; (e) assists with

the preparation and filing of administrative housing discrimination complaints; and

(f) provides post-referral litigation support services. FHJC provides these services free of

charge and without regard to income.

10.     FHJC also conducts testing investigations for government law enforcement

agencies, provides technical assistance to non-profit organizations engaging in fair

housing enforcement activities, and engages in policy initiatives that further FHJC's

mission, including the publication and dissemination of reports and educational materials.

**Town of Eastchester**

11.     Defendant Town of Eastchester is a municipal corporation organized under

the laws of the State of New York, with its principal offices at 40 Mill Road, Eastchester,

New York. The Town is located in southern Westchester County within the Southern

District of New York. The town includes the Villages of Bronxville and Tuckahoe.

12.     The Town is governed by a Town Board and has a Planning Board with

authority to enact and enforce the Town's zoning code. All references to Defendant

3

Town include any individual acting on behalf of, or under the authority derived from, the Town.

13.   The Town receives federal housing funds from the United States Department of Housing and Urban Development ("HUD") which it uses to operate a Section 8 Housing Choice Voucher Program.  As a recipient of federal housing funds, the Town is required to administer its housing programs in a manner that affirmatively furthers fair housing consistent with 42 U.S.C. § 3608.

14.   The Town's population as of the 2010 Census was approximately 32,000. The Town's population was 87% white and 5.8% African American or black as of the 2010 Census.  At that time, the Town's population was 5.48% Hispanic or Latino of any race.

## FACTUAL ALLEGATIONS

### Town's Discriminatory Section 8 Residency Preferences

15.   Congress established the Section 8 Existing Housing Program, now known as the Housing Choice Voucher Program, which is the largest rent subsidy funding source of the federal government, as part of the Housing and Community Development Act of 1974, P.L. 93-383, Title II, § 201(a), 88 Stat. 663, 662-66, now codified at 42 U.S.C. § 1437f and Housing Community and Development Act of 1987, Pub. L. Number 100-242 § 143, 101 Stat. 1814, 1850 (1988), codified as amended at 42 U.S.C. § 1437f(o).  Its purpose is to aid low-income families to obtain a decent place to live through the use of vouchers to subsidize their rent in the private housing market.

16.   Low income families and individuals may apply for Section 8 vouchers at any authorized housing agency in New York when the waiting lists are open.  Each

Housing Choice Voucher program is open to all applicants, not just local residents.

17.    With rental assistance, renters pay approximately one-third of their incomes for rent, and federal funding provided by HUD pays the remaining amount of rent to landlords.  Local housing agencies operating Housing Choice Voucher programs must administer their programs in accordance with rules prescribed by HUD.

18.    Local housing agencies, such as the Town of Eastchester, have limited discretion to develop local "preferences," including residency preferences, based on local housing needs and priorities, for rental voucher applicants.  All preferences, however, must comply with the non-discrimination and equal opportunity obligations of federal housing laws, federal civil rights laws, and the United States Constitution.  As required by 24 C.F.R. § 982.207(b)(1)(iii), the Town is prohibited from using a residency preference that has the purpose or effect of delaying or otherwise denying admission to its Section 8 voucher program on the basis of race or national origin.

19.    HUD regulations also prohibit the Town from using a residency preference that is based on how long an applicant has resided in the residency preference area.  See 24 C.F.R. § 982.207(b)(1)(iv).

20.    Local housing agencies, such as the Town of Eastchester, must adopt a written administrative plan that establishes local policies for operation of the Town's housing voucher program in accordance with HUD requirements.  The administrative plan sets forth the policies for the selection of applicants from the waiting list, as well as the Town's procedures for closing and reopening the waiting list. The Town is required to administer its program in accordance with its administrative plan and must advise HUD of any revisions to its plan.

21.     Since at least 2014, the Town's Housing Choice Voucher Program Administrative Plan has included two types of local preferences: a general preference and a residency preference.  A general preference is given to households that have been involuntarily displaced, are paying more than half of their income in rent, or are living in substandard housing or are homeless.  A residency preference is given to households that already live in the Town or include members who work or have been hired to work in the Town.

22.     Under the Administrative Plan, the residency preference trumps the general preference: first priority goes to applicants claiming both preferences; second priority to applicants claiming a residency preference only; third priority to applicants claiming a general preference only; and final preference to applicants not claiming either preference.

23.     As a result, applicants who do not already live or work in the Town will remain on a waiting list until *all* applicants with sufficient pre-existing ties to the Town have been admitted, regardless of the respective urgency of the applicants' needs.

24.     To enforce its preferences, the Town maintains waiting lists from which families are selected for participation in the voucher program by preference and time and date of their applications.  The Town compounds the advantage it offers to existing residents by giving priority for up to 10% of its allocation (or 26 units) to current Town residents.

25.     The resulting difference between residents' and non-residents' prospects for participating in the program is dramatic.  As part of its investigation, FHJC sent a tester to the Town to inquire about its program waiting lists on February 10, 2016.  A Town

employee told the FHJC tester that residents have a several-months to two-years wait, while nonresidents wait for *ten or fifteen years*.

26.   By using residency preferences and by warning non-resident prospective applicants of a ten- to fifteen-year wait, Defendant discourages non-residents, who are more likely to be African American and Hispanic, from applying to its voucher program. By its policies and conduct, Defendant suppresses minority participation in the Town's Housing Choice Voucher Program, denies housing opportunities to African Americans and Hispanics, and perpetuates the residential racial segregation that characterizes the Town.

**Town's Residency Preferences Favor White Section 8 Applicants and Perpetuate Racial Segregation**

27.   The impact of the Town's preferences on minority participation in its voucher program is striking.

28.   Public records—including data in the "Picture of Subsidized Households," annually compiled and produced by HUD, and the tabulations created by the U.S. Census from the 2014 American Community Survey—allow for estimates showing that Eastchester's population of voucher-eligible individuals is considerably whiter than the voucher-eligible populations of Westchester County, where Eastchester is located.

29.   Based on these estimates, in Eastchester, fully 87% of income-eligible households are white, compared to 46% in Westchester as a whole.  Correspondingly, in Eastchester, approximately 5% of eligible households are African American compared to 20% in Westchester; and approximately 4% are Hispanic, compared to 30% in Westchester.

30. As a result, the Town's residency preference is also a de facto racial preference. The results are unsurprising: Compared to a policy that would allow equal access to all applicants regardless of residency or would prioritize Westchester County residents, the Town's preference system reduces the number of African American and Hispanic households receiving vouchers.

31. Again, HUD and Census data confirm this result. In Eastchester, 75% of the Town's voucher holders are white, compared to 18% of voucher holders in Westchester County. Only about 15% of voucher holders in the Town are African American, compared to 48% of voucher holders in Westchester County, and about 9% of Town holders are Hispanic compared to 33% of holders in the county.

32. Even those numbers may over-state the rate at which African American and Hispanic households are offered vouchers by the Town, because they do not account for households that "port in" from other areas—households that are issued vouchers by Westchester County or other housing authorities and use them to rent housing in Eastchester. The racial disparities among voucher holders in the Town that have received those vouchers from the Town waiting list will likely reveal themselves to be even more striking once the ported-in households are excluded from the analysis.

**Town's Discriminatory Preferences - Zoning Ordinance**

33. In 2000 the Town adopted a zoning ordinance that authorizes a special use permit for Senior Housing Development in the Town's General Business District. *See* Zoning Law § 12(H)(27).

34. Under the ordinance, a Senior Housing Development may offer occupancy only to "senior households"—households in which all members must be at least 55 years

old, with two exceptions.  A household member can be under 55 only if he or she is the spouse of someone who is at least 55 years old or is over 18 years old and is the physician-certified caretaker of someone who is at least 55 years old.

35.    Households are limited to two persons in efficiency and one-bedroom units and three persons in two-bedroom units.

36.    All Senior Housing Developments must also offer a minimum of 15% of its units as affordable housing to senior citizens earning less than 80% of the Area Median Income for Westchester County, a number defined each year by HUD.

37.    As with its voucher program, the Town has adopted a residency-based preference system for its permitted Senior Housing Developments.  The owner or manager of any such development is required to establish a waiting list for prospective tenants or purchasers and to select tenants or owners based on the following preferences.

38.    First preference is granted to Town residents.  Applicants within this group are internally ranked by the cumulative length of their residency.  Priority is given to those who have lived in the Town longest.

39.    Second preference for Senior Housing Development occupancy is granted to immediate-family members of current and former Town residents—their parents, children, and siblings.  These applicants are also internally ranked, with relatives of current town residents given priority.  They, in turn, are ranked based on the cumulative length of their family members' Town residency.  Relatives of former Town residents are given next priority, also ranked based on the cumulative length of their relatives' residency.

40.    Third preference for Senior Housing Development residency is given to all other Westchester County residents, but even these applicants are given priority based on the cumulative length of any former residency within the Town.  Only after all Westchester County residents who have formerly lived in the Town have received housing are other Westchester residents considered, with priority given based on the cumulative length of their residency in the county.

41.    The fourth preference goes to all other applicants, but former residents of the Town are favored in this group too, and they are ranked based on the cumulative length of their former Town residency.  Finally, all other applicants are offered housing based on the cumulative length of their residency in New York State.

42.    The Town's zoning ordinance ensures enforcement of these preferences in perpetuity.  Any developer who applies for a Senior Housing Development permit must file and record a covenant, running with the land and binding upon all successive owners, ensuring that the project will be maintained as a Senior Housing Development, and that both the priority system and the minimum number of affordable units will always be maintained.

43.    The ordinance also ensures the Town's ability to police developments' adherence to the preference scheme.  The owner or manager of a Special Housing Development is required to provide to the Town all waiting lists, lists of available units, notices of rental or sale, and quarterly certified rent rolls.  The ordinance further authorizes the Town's Housing Choice Voucher Program Officer and Building Inspector to review these records and visit and inspect the premises and books, records, and accounts of any Senior Housing Development to verify compliance with the ordinance,

including the preference system.  Violations are punishable by fine and imprisonment.

**Town's Residency Preferences Favor White Seniors and Perpetuate**
**Racial Segregation**

44.   Only households with incomes below 80% of the Area Median Income for Westchester County as defined by HUD meet the Town's income eligibility criteria for Senior units.  Within this group of households, the Village's residency preferences favor non-Hispanic white households.

45.   Again, data from the American Community Survey allow for the scope of the effect to be estimated.  This data indicates that about 66% of income-eligible, one-, two-, and three-person 55-and-over households in Westchester County are white, 17% are African American, and 14% are Hispanic.  By comparison, in Eastchester, 65-and-over households with comparable incomes and sizes are 95% white, only 2% African American, and less than 1% Hispanic.  For families below the income threshold with a head-of-household between 45 and 64 years old, only about 4% are African American, and 2% are Hispanic.

46.   As with its voucher program, the Town's preference for overwhelmingly white resident applicants for Senior units over non-resident applicants who are more likely to be African American or Hispanic will reduce the number of African American and Hispanic households able to purchase or rent the affordable units and will perpetuate the Town's residential segregation.

47.   Developers have sought Town authorization for at least two Senior Housing Developments in Eastchester: Summerfield Gardens, a 92-unit project planned for 151 Summerfield Street, and Elide Manor Apartments, a 117-unit project planned for 40 Jackson Avenue.  Upon information and belief, the Eastchester Zoning Board of Appeals

has approved variances for both projects and begun considering other required elements of the applications, including environmental impact and site plan and architectural reviews. When these, and any other, developments are completed, their implementation of the Town zoning code's residency preferences will deny housing opportunities to African American and Hispanic applicants.

**The Town's Disregard of the Impact of Its Policies**

48.     Upon information and belief, the Town did not evaluate whether its residency preferences would have an adverse impact based on race and national origin by causing: a) significantly longer wait times for a larger proportion of African American and Hispanic income-eligible applicants for housing choice vouchers and for senior housing; and b) significantly fewer African American and Hispanic income-eligible households being provided vouchers and affordable senior housing.

49.     Upon information and belief, the Town did not evaluate whether its residency preferences perpetuate residential racial segregation within the Town prior to adopting its housing choice voucher administrative plan or enacting its zoning code as described above.

**Town's Discriminatory Policies Have Injured FHJC**

50.     FHJC recruits, trains, and utilizes individuals as "testers," persons who pose as renters or homebuyers for the purpose of obtaining information about the conduct of local governments, landlords, real estate companies, agents, and others to determine whether illegal housing discrimination is taking place.

51.     By reason of Defendant's conduct as described above, FHJC has suffered injury in the form of diversion of its resources. Plaintiff has expended staff time and

funds to investigate and respond to Defendant's discriminatory policies and practices which diverted resources away from FHJC's other activities.  As part of its investigative efforts, Plaintiff expended staff time and resources to conduct and review testing, to obtain and review public documents regarding the Town's zoning code and Section 8 program, and to analyze Census and HUD Section 8 data.

52.    Furthermore, Defendant's discriminatory policies and practices as described above have frustrated FHJC's mission to (a) ensure that all people have equal access to housing opportunities; (b) foster open, accessible and inclusive communities; and (c) eliminate housing discrimination throughout the New York City region, including in Westchester County, by making housing unavailable and imposing discriminatory terms and conditions because of race and national origin and by perpetuating residential racial segregation in the Town of Eastchester and Westchester County.

### FIRST CAUSE OF ACTION
(Fair Housing Act, 42 U.S.C. § 3604(a))

53.    Plaintiffs repeat and re-allege the foregoing paragraphs of their complaint as though fully set forth herein.

54.    Defendant's conduct as described above makes dwellings unavailable because of race and national origin in violation of the Fair Housing Act, 42 U.S.C. § 3604(a).

55.    Plaintiff is an aggrieved person as defined by 42 U.S.C. § 3602(i).  Plaintiff has been injured by Defendant's discriminatory conduct, and it has suffered damages as a result.

56.    Accordingly, under 42 U.S.C. § 3613(c), Plaintiffs are entitled to actual damages, injunctive relief, and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
(Fair Housing Act, 42 U.S.C. § 3604(b))

57.   Plaintiff repeats and re-alleges the foregoing paragraphs of its Complaint as though fully set forth herein.

58.   Defendant's conduct as described above discriminates in the terms, conditions, or privileges of the rental of a dwelling because of race, in violation of the Fair Housing Act, 42 U.S.C. § 3604(b).

59.   Plaintiff is an aggrieved person as defined by 42 U.S.C. § 3602(i).  Plaintiff has been injured by Defendant's discriminatory conduct, and it has suffered damages as a result.

60.   Accordingly, under 42 U.S.C. § 3613(c), Plaintiffs are entitled to actual damages, injunctive relief, and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendant as follows:

a.   Declaring that Defendant's actions violate the Fair Housing Act;

b.   Permanently enjoining Defendant from using, requiring, or enforcing residency preferences in the Town's Housing Choice Voucher Program

c.   Permanently enjoining Defendant from using, requiring, or enforcing residency preferences in permitting Senior Housing Developments;

d.   Enjoining Defendant to:

i.   Make all necessary modifications to its policies, practices and procedures to comply with fair housing laws, including amending the Town's Housing Choice Voucher Program Administrative Plan to remove residency preferences and amending the Town's zoning code to remove residency

preferences from the senior housing development special use permit;

ii.   Make all necessary modifications to the Town's housing choice voucher waiting list to allocate future vouchers based on the original date of application and not based on residency in the Town;

iii.  Train all Defendant's officials, personnel, and employees on fair housing laws;

iv.   Adopt and implement an affirmative marketing plan for the Town's Housing Choice Voucher Program that prevents future housing discrimination and does not create or maintain residential segregation;

v.    Modify restrictive covenants that currently apply to senior housing developments to remove residency preferences; and

vi.   Remedy the unlawful discrimination caused by its actions and omissions.

e.    Awarding damages to Plaintiffs;

f.    Awarding reasonable attorneys' fees and costs under 42 U.S.C. § 3613(c); and

g.    Awarding such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       November 21, 2016

EMERY CELLI BRINCKERHOFF
& ABADY LLP

By: _____
       Diane L. Houk
       Hayley Horowitz
       600 Fifth Avenue, 10th Floor
       New York, New York 10020
       (212) 763-5000

*Attorneys for Plaintiffs*

15